UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARYELLEN V. BENITO, D.O.,

**MEMORANDUM &
ORDER**
18-CV-5275 (GRB)(AYS)

Plaintiff,

-against-

EAST HAMPTON FAMILY MEDICINE a/k/a
DR. GEORGE P. DEMPSEY, MD, PC, DR.
GEORGE P. DEMPSEY, as an aider and
abettor, LAURA DEMPSEY, as an aider and
abettor, and DOUGLAS KRONENBERG, as
an aider and abettor,

Defendants.
------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

Plaintiff Maryellen V. Benito ("Dr. Benito" or "Plaintiff") commenced this action

against East Hampton Family Medicine a/k/a Dr. George P. Dempsey, MD, PC ("the

Practice"), Dr. George P. Dempsey, as an aider and abettor ("Dr. Dempsey"), Laura

Dempsey, as an aider and abettor ("Mrs. Dempsey") and Douglas Kronenberg, as an

aider and abettor ("Kronenberg") (collectively "Defendants") alleging, inter alia,

pregnancy discrimination in violation of Title VII and the NYSHRL.

Currently before the Court are the parties' cross-motions stemming from

Plaintiff's August 7, 2020 deposition of defendant Kronenberg. Defendants move for a

protective order to preclude discovery as to the content of a letter between counsel and a

representative of the Practice to which annotated texts and a one-page email were

attached. Docket Entry ("DE") [52]. Plaintiff seeks sanctions for the actions of

1

Defendants' counsel during the deposition of defendant Kronenberg. DE [54]. For the reasons set forth below, both motions are denied.

## BACKGROUND

The Court presumes familiarity with the factual background of this litigation.  Pertinent to the instant motions, on August 7, 2020, Plaintiff conducted a remote deposition of defendant Kronenberg. See Douglas Kronenberg Deposition 8/7/20 ("Kronenberg Tr."), DE [52-3]. Below the Court summarizes the facts arising at that deposition that are relevant to the pending motions. Plaintiff's motion arises out of discussion regarding a document referred to by the witness as having been reviewed in preparation for the deposition. Defendants' motion arises out of allegations regarding interactions between the witness and counsel defending the witness.

A.    Kronenberg's Testimony Regarding Documents Reviewed In Preparation for
      the Deposition

During the deposition, Plaintiff's counsel, Saul Zabell, Esq. ("Zabell" or "Plaintiff's counsel") asked Kronenberg what documents he reviewed in preparation for the deposition, to which defense counsel objected and directed the deponent not to answer. See Kronenberg Tr. 7:16-19. This exchange was ultimately marked for a ruling by the Court.

Following that exchange, Zabell further inquired about notes taken, to which Kronenberg indicated that he had taken one page of notes. Kronenberg Tr. 9:2-12. Zabell then demanded production of the notes. Id. at 9:25-10:4.  He then asked questions relating to the documents reviewed in preparation for the deposition, including whether there were any notes contained thereon. Id. at 10:7-11:2. Kronenberg confirmed that there were

notes on the documents, and that he was the one who made the handwritten notes on the documents. Id. at 10:20-24. The following exchange occurred among Defendants' counsel Jennifer Nigro, Esq. ("Ms. Nigro") and Jeffrey Pagano, Esq. (Mr. Pagano") (Brooke is the court reporter):

> Q.     Okay. Because you testified that in preparation for this deposition, you reviewed six to 12 documents, do you recall that?
>
> A.     Yes.
>
> Q.     So the six to 12 documents, what were they?
>
> A.     They were various pages of text messages and an e-mail.
>
> Q.     And in preparation for this deposition, you made annotations on those documents you reviewed, yes?
>
> A.     Yes.
>
> > Mr. Pagano:    What documents?
> >
> > Ms. Nigro:     Do you –
> >
> > The Witness:  Well –
> >
> > Mr. Zabell:    Excuse me, I just heard both of you speak. Stop it.
> >
> > The Witness:  I'm trying to clarify the question.
> >
> > Mr. Zabell:    Mr. Kronenberg, I just want you to respond to the question—
> >
> > Ms. Nigro:     He doesn't understand the question.
> >
> > Mr. Zabell:    --with a yes, no or I cannot answer it.
> >
> > > Ms. Nigro:     Wait a minute, you instructed him at the beginning of this deposition that he's not understanding a question, if he answers, yes or no, you're going to assume he did. He's trying to tell you that he doesn't understand the question.

Mr. Zabell:     Ms. Nigro, if you would stop sullying my transcript and listen to what is being said, you would know that I gave him three different options. Brooke, could you repeat my question.

(Whereupon, the record was read by the reporter.)

Q.     Did you hear that, Mr. Kronenberg?

A.     I did.

Q.     So you made annotations on those documents that you reviewed, correct?

A.     Not yesterday.

Q.     You made annotations  - -

A      Prior to - - prior to, this meeting or prior to the preparation for this meeting, annotations were made on these documents.

Q.     And who made these annotations?

A.     I did.

Q.     And where were you when you made those annotations?

A.     Actually in my office.

Q.     And who was with you when you made those annotations?

A.     No one. I was by myself.

Q.     So, the annotations that you made on those documents were not at anybody's direction, they were on their own, correct?

A.     Yes.

Q.     Thank you. And the notes that you made, that one page of notes that you made in preparation for today's deposition, you made those notes yourself, correct?

A.     I did.

Q.     Did anybody tell you what to write down in your notes?

A.      No, they did not.

Kronenberg Tr. 68:5-70-20. Kronenberg's testimony regarding the documents remained

consistent:

Q.      And you testified that the annotations that were on the documents
you reviewed in preparation for your deposition were annotations that you
had made while you were alone in your office, correct?

A.      Yes, that is true.

Q.      And you made those annotations at some time before you reviewed
the documents in preparation for this deposition, correct?

A.      Yes.

Q.      And the documents that you reviewed in preparation for this
deposition are currently at your home, correct?

A.      Yes.

Q.      So at some point, you moved them from your office to your home;
is that correct?

A.      Yes.

Q.      Does anybody else have a copy of these documents that you
reviewed in preparation for this deposition?

A.      Yes.

Q.      Who has those documents?

A.      My attorneys.

Q.      And when did you send them to your attorneys?

A.      Oh my God, when we first started this suit.

Q.      And why did you send them to your attorneys?

A.      Well it seems like they would need to know what was going on
and that's why I did it. I give them all the information that I have.

Q.      Okay. And was that part of just turning over documents through

the discovery process?

A.     No.

Q.     No. So the documents that you reviewed in preparation were not documents that were turned over during the discovery process?

A.     No. These are the documents that - - the text messages and emails are documents that I gave to my attorney at the very beginning of the lawsuit, that was it.

Q.     Did those documents have the annotations that you made on them at the time that you turned them over to your attorneys?

A.     Yes.

Q.     And you made those annotations to the documents as part of the discovery process, correct?

A.     No, I - -

Ms. Nigro: Objection. You can answer.

The Witness: Sorry. I - - no. When we first hired Jeff and Jen, I provided them with all of the communications that I had with Dr. Benito and my notes that were on that - - on those textings. I don't know if that clears up the question.

Id. 74:9-76:10.

B.     The Court's Ruling on the Record Regarding the Documents

During the Kronenberg deposition, the parties called the Court for a ruling regarding production of the documents reviewed in preparation for the deposition, as well as the one page of notes taken by Kronenberg in preparation for the deposition. After hearing argument from counsel, the Court ruled that documents reviewed by Kronenberg in preparation for his deposition, as well notes he made, must be identified and produced unless Defendants were making a specific, privilege-based objection. Kronenberg Tr. 60:15-19; 61:11-12; 62:8-15. The Court further ruled that even if defense counsel

objected they nonetheless were required to identify and describe, on the record, every document to which they were objecting in order for the Court to be able to rule on any motion for a protective order. Id. 62:20-63:1.

C.     Attorney Conduct During the Deposition

As noted above, defending Kronenberg during the deposition were Defendants' counsel Ms. Nigro and Mr. Pagano (collectively "defense counsel"). During the call with Court regarding the documents, Mr. Zabell also expressed his concerns over defense counsels' interjections during the deposition. The issue was not ultimately addressed by the Court because defense counsel represented that they would only speak aloud for the remainder of the deposition when objecting. Subsequent to defense counsels' representations, the following exchanges occurred.

Q.     And in preparation for this deposition, you made annotations on those documents you reviewed, yes?

A.     Yes.

Mr. Pagano:     What documents?

Ms. Nigro:     Do you –

The Witness:     Well –

Mr. Zabell:     Excuse me, I just heard both of you speak. Stop it.

The Witness:     I'm trying to clarify the question.

Mr. Zabell:     Mr. Kronenberg, I just want you to respond to the question—

Ms. Nigro:     He doesn't understand the question.

Mr. Zabell:     --with a yes, no or I cannot answer it.

Ms. Nigro:     Wait a minute, you instructed him at the beginning of this deposition that if he's not understanding a question, if he answers, yes or

no, you're going to assume he did. He's trying to tell you that he doesn't understand the question.

Mr. Zabell:     Ms. Nigro, if you would stop sullying my transcript and listen to what is being said, you would know that I gave him three different options. Brooke, could you repeat my question.

(Whereupon, the record was read by the reporter.)

Kronenberg Tr. 68:12-69:16.

Following further questioning regarding the genesis of the documents which are the subject of the instant motions, Mr. Pagono stated on the record:

Mr. Pagano;     Saul, it appears – I hope we're on the record. It appears you didn't ask the question. You didn't ask the question as to whose behest were the notes made. He made them in his office on his own. He was asked to explain the situation as he saw it based upon the allegations in the Complaint. And he responded to Counsel and attached the e-mails to a communication to Counsel. And the notations refer to – the notations refer to segments in the cover letter to us explaining his response to the Complaint.

Mr. Zabell:     That's a wonderful speaking objection for the purpose of coaching the witness, but –

Mr. Pagono:     He's not, you never asked the question.

Mr. Zabell:     Are you raising your voice?

Mr. Pagano[1]:     Yes, I'm raising my voice, Counsel because you're playing games with your questions. You said to us, Counsel, are you ready, basically to produce the documents. And we responded no, what he replied and what you didn't ask – you didn't ask as to why he was preparing the notes to the documents and by whose request was he making the notations and otherwise communicating.

Kronenberg Tr. 71:1-72:3.

---

[1]. The deposition transcript lists Ms. Nigro as the speaker but all parties agree that Mr. Pagano was the speaker and note that the error has been brought to the Court reporter's attention.

Finally, during Mr. Zabell's inquiry regarding Kronenberg's representation by defense counsel, the following exchange occurred:

> Q.    But you have no written agreement saying that they represent you individually, correct?
>
> Ms. Nigro:    Yes, you do.
>
> A.    I'm certain actually that we do.

Kronenberg Tr. 76:19-22. The record reflects at that point Mr. Zabell ended the deposition due to defense counsels' interjections.

## II.    The Discovery Motions

Defendants move this Court for a protective order to limit discovery on twelve pages of text messages and one page of email bearing annotations made by defendant Kronenberg. Defendants argue that the documents are privileged. In support of their claims Defendants submit the affirmation of Jeffrey Pagano, (the "Pagano Affirmation") and the affidavit of defendant Kronenberg (the "Kronenberg Affidavit"). In his affidavit, Kronenberg states that he made the annotations on the documents for his attorneys as a result of a meeting between himself, Dr. Dempsey, Mrs. Dempsey and Mr. Pagano in June 2018. Defendants' Mot. For Protective Order, Affidavit of Douglas Kronenberg In Support of Defendants' Motion for Protective Order ("Kronenberg Aff."), ¶ 6, DE [52-5]. Kronenberg states that "[t]he letter and the attachments – the annotated text messages and 1 -page email – were made on behalf of EFHM, at Mr. Pagano's request, in furtherance of legal advice after Plaintiff threatened to sue EFHM." Id. at ¶ 7. Kronenberg also states that "[o]n the evening of August 6, 2020, while reviewing the attached 12 pages of texts and the 1 -page email with my annotations, I wrote notes – a single page – regarding dates and events that were discussed with my counsel in preparation for my deposition

the following day. Those notes reflect discussions with Mr. Pagano and Ms. Nigro, which track the texts and the 1- page email with my annotations." Id. at ¶ 10.

Defendants have submitted the twelve pages of texts messages and one-page email bearing Kronenberg's handwritten annotations for in camera review.

Plaintiff's motion seeks sanctions for the actions of defense counsel during the deposition of defendant Kronenberg. Plaintiff contends that defense counsel impeded the ability to conduct an orderly deposition of Kronenberg by making speaking objections and engaging in disruptive conduct. Plaintiff points to the fact that nearly 25% of the deposition transcript was taken up by Court proceedings and discussions between counsel relative to counsel's actions. Plaintiff further argues that defense counsel made speaking objections which were deliberately designed to coach their witness. Defense counsel counters that their behavior does not warrant the imposition of sanctions, and that Plaintiff's counsel's own behavior, that of Mr. Zabell, was just as disruptive as their alleged conduct.

DISCUSSION

I.  <u>Legal Principles</u>

A.  <u>Standards Applicable to Assertions of Privilege</u>

Where, as here, a party raises privilege as a basis for withholding otherwise discoverable materials, "the burden is on a party claiming the protection of a privilege to provide evidence sufficient to establish the essential elements of the privileged relationship." <u>S.E.C. v. NIR Group., LLC</u>, 283 F.R.D. 127, 131 (E.D.N.Y. 2012) (citations omitted). "This burden cannot be discharged by mere conclusory or <u>ipse</u> <u>dixit</u> assertions." <u>Id.</u>

1.  Attorney-Client Privilege

Under federal law, "[t]he attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981).)

2.  Work Product Doctrine

The federal work-product doctrine protects from disclosure "documents prepared 'in anticipation of litigation or for trial by or for [a] party or by or for that ... party's representative.'" Ruotolo v. City of New York, No. 03-cv-5045, 2005 WL 823015, at *1 (S.D.N.Y. Apr. 7, 2005) (quoting Fed. R. Civ. P. 26(b)(3) ); see also DeAngels v. Corzine, No. 11-cv-7866, 2015 WL 585628, at *4 (S.D.N.Y. Feb. 9, 2015) ("The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative."). The Second Circuit has construed the phrase "in anticipation of litigation" to mean that, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis removed)

In analyzing the applicability of the work-product doctrine, courts distinguish

between factual and opinion work product. See, e.g., Allied Irish Banks v. Bank of Am.,

N.A., 240 F.R.D. 96, 105 (S.D.N.Y. 2007) ("[T]he work product doctrine protects both

factual and opinion work product...."); NXIVM Corp. v. O'Hara, 241 F.R.D. 109, 127

(N.D.N.Y. 2007) ("It is important to note that the work product doctrine classifies

documents into two categories: 'non-opinion' work product and 'opinion' work

product."). Whereas opinion work product includes "mental impressions, conclusions,

opinions, or legal theories of an attorney," In re Grand Jury Proceedings, 219 F.3d 175,

190 (2d Cir. 2000), non-opinion or factual work product includes "nonprivileged

facts." Strougo v. BEA Assocs., 199 F.R.D. 515, 521 (S.D.N.Y. 2001). It is well-

established that "[o]pinion work product receives higher protection so that litigation

strategy is not revealed...." Strougo, 199 F.R.D. at 521; see also Palazzetti Imp./Exp., Inc.

v. Morson, No. 98-cv-722, 2000 WL 1015921, at *3 (S.D.N.Y. July 21, 2000)

("Although both factual and opinion work product fall within the scope of the doctrine,

an attorney's mental impressions, conclusions, opinions, or legal theories typically are

afforded greater protection."). Non-opinion work product, therefore, "is not discoverable

absent a showing of 'substantial need,'" and opinion work product "is not discoverable

absent a 'highly persuasive showing' of need." Koumoulis v. Indep. Fin. Mktg. Grp.,

Inc., 295 F.R.D. 28, 39 (E.D.N.Y. 2013) (quoting In re Grand Jury Proceedings, 219 F.3d

at 190-91), aff'd, 29 F. Supp. 3d 142 (E.D.N.Y. 2014); see also United States v.

Ghavami, 882 F. Supp. 2d 532, 540 (S.D.N.Y. 2012) (holding that opinion work product

"is entitled to virtually absolute protection"); Strauss v. Credit Lyonnais, S.A., 242

F.R.D. 199, 230 (E.D.N.Y. 2007) ("[F]actual material may be ordered upon a showing

that the party seeking discovery has substantial need of the materials and that the party is

unable without undue hardship to obtain the substantial equivalent of the materials by other means." (internal quotation and alteration omitted)).

    3. <u>Waiver of Privilege</u>

        i. <u>Voluntary Disclosure</u>

"It is [also] well-settled that '[v]oluntary disclosure of privileged communications to a third party results in waiver of the attorney-client privilege.'" <u>Curto v. Med. World Commc'ns, Inc.</u>, 783 F.Supp.2d 373, 378 (E.D.N.Y. 2011) (quoting <u>Local 851 of the Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.</u>, 36 F. Supp. 2d 127, 129 (E.D.N.Y. 1998) ); <u>see</u> <u>also</u> <u>In re von Bulow</u>, 828 F.2d 94, 103 (2d Cir. 1987) ("Matters actually disclosed in public lose their privileged status because they obviously are no longer confidential*."); <u>Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency</u>, 811 F. Supp. 2d 713, 744 (S.D.N.Y. 2011) ("[T]he attorney[-]client privilege can be waived if the document is published, or disclosed to private individuals." (internal quotation and citation omitted)), <u>amended</u> <u>on</u> <u>reconsideration</u>, (S.D.N.Y. Aug. 8, 2011). "Under federal and New York State law, a party waives attorney-client privilege where 'he voluntarily undertakes actions that will predictably lead to the disclosure of the document.'" <u>Falise v. Am. Tobacco Co.</u>, 193 F.R.D. 73, 79 (E.D.N.Y. 2000) (quoting <u>Bowne of New York City, Inc. v. AmBase Corp.</u>, 150 F.R.D. 465, 479 (S.D.N.Y. 1993)). As to work product, the test for whether waiver has occurred "is whether the disclosure at issue has 'substantially increased the opportunities for potential adversaries to obtain the information.'" <u>In re Vitamin C Antitrust Litig.</u>, No. 06-md-1738, 2011 WL 197583, at *2 (E.D.N.Y. Jan. 20, 2011) (internal quotation and citation omitted) (quoting <u>In re Visa Check/MasterMoney Antitrust Litig.</u>, 190 F.R.D. 309, 314

(E.D.N.Y. 2000)).

Just as the party asserting privilege has the burden of establishing it, that party "also bears the burden of demonstrating that it has not been waived." HSH Nordbank AG New York Branch v. Swerdlow, 259 F.R.D. 64, 70 (S.D.N.Y. 2009); see also Curto, 783 F. Supp. 2d at 380 ("The party asserting the protection afforded by the work product doctrine has the burden of showing both that the protection exists and that it has not been waived." (internal quotation and citation omitted)).

B.  Defendants' Motion For a Protective Order

At the outset, as noted above, Defendants have provided an affidavit from Kronenberg and an affirmation from Mr. Pagano as part of the instant motion. However, for the purposes of this Order the Court relies primarily on the testimony provided by Kronenberg during his deposition when rendering its decision,

Defendants' motion alleges that the copies of 12 text messages and the one-page email bearing Kronenberg's annotations were attached to a letter sent to Mr. Pagano, at his request, following a meeting in June 2018 between Defendants and counsel, subsequent to Plaintiff's separation from the Practice. However, the affirmation and affidavit setting forth these statements contradict Kronenberg's testimony at his deposition. At no time during the deposition did Kronenberg testify that he made the annotations or attached the 12 text messages at the request or direction of anyone else. At no point did Kronenberg testify that there was a meeting with counsel, a letter to counsel, or a request from counsel for specific information. See Kroonenberg Tr. 69:19-25; 70:1-12. Indeed, Kronenberg was very clear and consistent that he made the notes while alone in his office, and did not do so at anyone's direction:

Q.      And you testified that the annotations that were on the documents you reviewed in preparation for your deposition were annotations that you had made while you were alone in your office, correct?

A.      Yes, that is true.

Q.      And you made those annotations at some time before you reviewed the documents in preparation for this deposition, correct?

A.      Yes.

Q.      And the documents that you reviewed in preparation for this deposition are currently at your home, correct?

A.      Yes.

Q.      So at some point, you moved them from your office to your home; is that correct?

A.      Yes.

Q.      Does anybody else have a copy of these documents that you reviewed in preparation for this deposition?

A.      Yes.

Q.      Who has those documents?

A.      My attorneys.

Q.      And when did you send them to your attorneys?

A.      Oh my God, when we first started this suit.

Q.      And why did you send them to your attorneys?

A.      Well it seems like they would need to know what was going on and that's why I did it. I give them all the information that I have.

Q.      Okay. And was that part of just turning over documents through the discovery process?

A.      No.

Q.      No. So the documents that you reviewed in preparation were not documents that were turned over during the discovery process?

15

A.     No. These are the documents that - - the text messages and emails
are documents that I gave to my attorney at the very beginning of the
lawsuit, that was it.

Q.     Did those documents have the annotations that you made on them
at the time that you turned them over to your attorneys?

A.     Yes.

Q.     And you made those annotations to the documents as part of the
discovery process, correct?

A.     No, I - -

Ms. Nigro: Objection. You can answer.

The Witness: Sorry. I - - no. When we first hired Jeff and Jen, I
provided them with all of the communications that I had with Dr. Benito
and my notes that were on that - - on those textings. I don't know if that
clears up the question.

Id. 74:9-76:10.

Applying the legal principals above to the clear testimony of the witness it is clear

to this Court that the documents at issue are not privileged. Merely attaching documents

to attorney-client communications - which is what Kronenberg did - does not constitute a

basis for assigning the privilege. Neither the 12 text messages nor one-page email even

remotely suggest that either document was seeking legal advice. Although the Court does

not doubt that a document can be found to be privileged where it constitutes an implicit

request for legal advice and the other elements of the privilege are present, there is

nothing about the email with annotations and the text messages that even suggests an

implicit request for legal advice. If anything, it appears that the email and text

messages were sent to Mr. Pagano as a matter of general information. Defendants have

not submitted any evidence establishing that that the email and text messages constituted

a request for legal advice. As Kronenberg consistently established during his deposition, he was just providing the attorneys with all of the information that he had. Accordingly, the documents are not protected by the attorney-client privilege.

Nor are the documents afforded the protection of the work product doctrine. In contrast to the attorney-client privilege, which is intended to encourage full disclosure by the client, the work-product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir.1998), quoting Hickman v. Taylor, 329 U.S. 495, 511 (1947). "'[A]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" In re Leslie Fay Cos. Sec. Litig., 161 F.R.D. 274, 279 (S.D.N.Y.1995), quoting United States v. Nobles, 422 U.S. 225, 238 (1975). The work-product doctrine protects the ruminations by an attorney or party concerning the strategy to be followed in a litigation. In re Grand Jury Subpoena Dated Oct. 22, 2001, 282 F.3d 156, 161 (2d Cir. 2002); In re Steinhardt Partners, L.P., 9 F.3d 230, 234 (2d Cir.1993); Feacher v. Intercontinental Hotels Group, 3:06-CV-0877 (TJM/DEP), 2007 WL 3104329 at *4 (N.D.N.Y. Oct. 22, 2007).

Upon review of the email with annotations and the text messages this Court concludes that they do not disclose client confidences, do not seek legal advice and do not disclose any litigation strategy. Thus, they contain nothing protectable under either the attorney-client privilege or the work product doctrine. Kronenberg's testimony is clear that he made the annotations on the text messages and one-page email alone and

never once said he was instructed to or requested by counsel to do so, only that he sent them to his counsel as a means by which to provide them all of the information in his possession. Combined with the fact that the documents merely contain historical facts concerning the parties' dispute that are so basic they do not even indirectly reflect Defendants' or counsels' determination of what is significant in this case, the documents do not fall within the protection of the work product doctrine.

For the foregoing reasons, Defendants' motion for a protective order is denied. Defendants are accordingly directed to provide Plaintiff with the documents forthwith. If, after reviewing the documents, Plaintiff wishes to re-depose Kronenberg, Plaintiff may elect to do so. However, the deposition is limited in scope to questions relating to and stemming from the documents. In light of the limited nature of the documents to be disclosed, the Court rules that any additional deposition of Kronenberg shall be limited to a total of two hours. The deposition must be conducted via remote means and Defendants shall pay any costs associated with the re-deposition.

C. Plaintiff's Motion for Sanctions

Plaintiff seeks sanctions under 28 U.S.C. § 1927 and/or the Court's inherent authority, alleging that defense counsels' objections/interjections during the Kronenberg deposition were made in bad faith and for the sole purpose of disrupting the deposition. Section 1927 sanctions are authorized for an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Similarly, the Court has the inherent authority to issue sanctions for behavior that is made in "bad faith, vexatiously, wantonly, or for oppressive reasons." See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975).

For sanctions under either authority, the court must find "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000). Such bad faith can be found where the "actions are *so completely without merit* as to require the conclusion that they must have been undertaken for some improper purpose." Id. (quoting Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986)).

As discussed above, a majority of defense counsels' interjections were made prior to the parties' call to the Court and defense counsels' representation that they would only speak aloud for objections. However, while more limited after the call to the court, the interjections continued. While the Court is certain that defense counsel should have known that their interjections were improper, the Court cannot say with certainty that they were made in bad faith. If every improper objection is to be inherently considered made in bad faith, this would result in sanctions for every improper objection, a result not contemplated by either authority. See Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 340 (2d Cir. 1999) (reversing award of sanctions where improper conduct is merely the "result of poor legal judgment"); Estate of Sauter v. Citigroup, Inc., No. 14-CV-5812 (LGS), 2015 WL 3429112, at *4 (S.D.N.Y. May 27, 2015) (requiring a "high degree of specificity in the factual findings" before § 1927 sanctions are warranted). Accordingly, while inappropriate, defense counsels' behavior does not reflect a clear showing of bad faith such that sanctions are warranted on that basis. See Sicurelli v. Jeneric/Pentron, Inc., No. 03-CV-4934 (SLT) (KAM), 2005 WL 3591701, at *7 (E.D.N.Y. Dec. 30, 2005) (denying § 1927 sanctions even though counsel's misconduct "significantly frustrate[d] the progress" of the deposition).

While the Court declines to impose Section 1927 sanctions, the Court does not hesitate to admonish defense counsels' conduct. Although the Court has determined that defense counsels' conduct did not rise to the level of bad faith for purposes of 28 U.S.C. § 1927, the conduct was a breach of counsels' role as an officer of this Court. See Local Civil Rule 26.4 for the Eastern District of New York ("Counsel are expected to cooperate with each other, consistent with the interests of their clients, in all phases of the discovery process and to be courteous in their dealings with each other...."). Counsels' conduct frustrated the fair examination of the witness by disrupting the deposition and unnecessarily creating a contentious and unpleasant atmosphere. As officers of the Court counsel should have known better and are now cautioned that further conduct of the kind demonstrated during this deposition may result in this Court's imposition of sanctions under Section 1927.

CONCLUSION

For the foregoing reasons, Defendants' motion for a protective order as set forth in Docket Entry No.52 is denied and Plaintiff's motion for sanctions as set forth in Docket Entry No. 54 is denied. Defendants are directed to provide Plaintiff with the requested documents forthwith. If, after reviewing the documents, Plaintiff wishes to re-depose Kronenberg, Plaintiff may elect to do so. However, the deposition is limited in scope to questions relating to and stemming from the documents and may not exceed two hours. The deposition must be completed within the next thirty days and is to be conducted via remote means. Defendants shall pay any costs associated with the re-deposition.

Dated: Central Islip, New York
December 17, 2020

 /s/ Anne Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge